UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH L. SMITH,

                Plaintiff,

       v.

WESTCHESTER COUNTY, et al.,

                Defendants.

No. 19-CV-1283 (KMK)

OPINION & ORDER

Appearances:

Joseph L. Smith
Yonkers, NY
*Pro Se Plaintiff*

Thomas J. Bracken, Esq.
Bennett, Bricklin & Saltzburg LLC
New York, NY
*Counsel for All Defendants*

Jane Hogan Felix, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants Westchester County, Joseph Spano, Leandro Diaz, Eric Middleton, Francis Delgrosso, and Karl Vollmer*

KENNETH M. KARAS, United States District Judge:

      Joseph L. Smith ("Plaintiff"), until recently an inmate at Westchester County Jail ("WCJ"), brings this pro se Action, under 42 U.S.C. § 1983, against Westchester County; Joseph K. Spano ("Spano"), Commissioner of the Westchester County Department of Correction ("WCDOC"); Leandro Diaz ("Diaz"), Deputy Commissioner of WCDOC; Eric Middleton ("Middleton"), Francis Delgrosso ("Delgrosso"), and Karl Vollmer ("Vollmer"), all Assistant Wardens at WCDOC; Aramark Correctional Services, LLC ("Aramark"); and Donna Blackman ("Blackman") and Manuel Mendoza ("Mendoza"), both Aramark employees. (*See* Compl. (Dkt.

No. 1).) This Opinion refers to Westchester County and Aramark as "Municipal Defendants," the remaining Defendants as "Individual Defendants," and all Defendants collectively as "Defendants."

Plaintiff alleges that Defendants violated his constitutional rights while he was incarcerated at WCJ. Before the Court is Defendants' Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (*See* Not. of Mot. (Dkt. No. 26).) For the following reasons, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Complaint, and are taken as true for the purpose of resolving the instant Motion. *See Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 190 (2d Cir. 2019).

On August 30, 2018, Plaintiff arrived at WCJ. (Compl. ¶ 15.) Since his arrival, Plaintiff has received meals "reeking of old food, undercooked meat and overcooked rice, spaghetti or noodles, minimal portions, molded bread/stale bread, served on meal trays that are covered in mold, as . . . are the juice containers." (*Id.*)[1] Specifically, on September 5, 2018, Plaintiff's meal arrived on a meal tray "covered in black mold spots," "contained undercooked meat that was bloody internally," included "stale bread," and came with a juice container "covered in mold." (*Id.* ¶ 16.) Plaintiff attempted to file a grievance with one Sergeant Kitt ("Kitt"), but Kitt informed Plaintiff that Delgrosso "and the higher ups did not want sergeants accepting Aramark food-related grievances," and refused to accept Plaintiff's grievance. (*Id.* ¶ 17.) On September

---

[1] For ease of reading, all quotations from the Complaint reflect corrections of minor errors in spelling, punctuation, and capitalization.

2

7, 12, and 16, 2018, Plaintiff's meals again contained undercooked meat that was "pink and bloody," along with overcooked rice, spaghetti, and noodles. (*Id.* ¶ 18.) Plaintiff requested a replacement tray, but the kitchen staff told him to "cook out the food . . . in the microwave." (*Id.*) However, Plaintiff had no access to a microwave. (*Id.*)

On September 29, 2018, Plaintiff was served a meal of chili and beans that "reeked of old, rotting food." (*Id.* ¶ 19.) Correctional staff assured him that the food was safe to eat, but after eating, Plaintiff "began to suffer several ailments." (*Id.*) On October 2, 9, 11, 14, and 24, 2018, Plaintiff again "received undercooked meat on his trays along with overcooked spaghetti served on molded meal trays." (*Id.* ¶ 22.) On October 14, 2018, Plaintiff again attempted to submit a grievance to another sergeant, Sergeant Martinez, who similarly refused to accept the grievance, saying that a new policy prohibited him from accepting food-related grievances. (*Id.* ¶ 23.)

Plaintiff alleges that his juice containers were "always covered in mold," and that he therefore refrained from drinking, leaving him "extremely thirsty and dehydrated." (*Id.* ¶ 20.) Plaintiff also states that his meal trays were "always short with minimal items and small portions," causing him "to lose significant weight" and experience "fatigue from lack of nutrients." (*Id.* ¶ 21.) Plaintiff "continues to receive undercooked foods 2–3 [times] a week served on moldy meal trays, that almost every day contain leftover, dirty foods from previous meals as a result of inmate workers failing to property clean the tray." (*Id.* ¶ 25.) Further, on six separate occasions Plaintiff has discovered human hair in his meals "as a result of inmate workers not being properly supervised when preparing inmate meals," and failing to wear "hair nets, beard nets, and gloves when handling inmate meals." (*Id.* ¶ 26.) Plaintiff also alleges that

3

the inmate kitchen "is extremely dirty, and covered in flies, along with mice/rats who invade the food supply on a constant basis." (*Id.* ¶ 28.)

Plaintiff further alleges that "Defendants Mendoza, Blackman, Vollmer, Middleton, Delgrosso, Spano, Diaz, [and] Westchester County had sufficient prior knowledge that the food being served to inmates at WCDOC was substandard and causing dozens of inmates to become sick," as demonstrated by the "previous and present lawsuits, grievances, complaints, and daily meetings . . . where grievances are discussed." (*Id.* ¶ 29.) Defendants have nevertheless "fail[ed] to correct the problem," and inmates continue to become ill due to poor food quality and sanitation. (*Id.*) Plaintiff claims to have experienced weight loss, nausea, vomiting, diarrhea, fatigue, headaches, blurred vision, hunger pangs, and stomach cramps as a result of the substandard food provided. (*Id.*) He seeks $300,000 in compensatory damages and $1,000,000 in punitive damages. (*Id.* ¶ 36.)

### B. Procedural Background

Plaintiff filed his Complaint on February 8, 2019 and an application to proceed in forma pauperis ("IFP") on February 26, 2019. (Dkt. Nos. 1–3.) The Court granted Plaintiff's IFP application on March 4, 2019. (Dkt. No. 5.) On July 18, 2019, Defendants filed the instant Motion To Dismiss and accompanying papers. (Not. of Mot.; Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. Nos. 26–27).) Plaintiff never filed a response, and the Court deemed the Motion fully submitted on September 19, 2019. (Dkt. No. 32.)

## II. Discussion

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff fails to allege Individual Defendants' personal involvement in the alleged constitutional wrongdoings, fails to state a *Monell* claim against Municipal

4

Defendants, and fails to state an Eighth Amendment claim against all Defendants. (*See generally* Defs.' Mem.) Because the Court determines that Plaintiff has failed to establish the personal involvement of all Individual Defendants and *Monell* liability against Municipal Defendants, the Court need not, and so does not, address Defendants' arguments that Plaintiff failed to state an Eighth Amendment claim.

A. Standard of Review

While a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. However, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of

5

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Hernandez v. United States*, 939 F.3d 191 (2d Cir. 2019) ("[W]e accept as true all factual allegations . . .") (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

B. Analysis

1. Personal Involvement

Defendants argue that Plaintiff has failed to plead the personal involvement of any of Individual Defendants—Spano, Diaz, Middleton, Delgrosso, Vollmer, Mendoza and Blackman—as required to state a § 1983 claim. The Court agrees.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citation, italics, and quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Here, the bulk of Plaintiff's allegations suggest only that Individual Defendants inhabited supervisory roles; these allegations do not, however, support a plausible inference of personal involvement in constitutional deprivations. For example, Plaintiff alleges that Spano was

7

"responsible for the conditions of confinement at D.O.C.," (Compl. ¶ 7), that Diaz was "responsible for the customs, usages and policies at D.O.C.," (*id.* ¶ 8), that Middleton was "responsible for the inmate kitchen menus, safety supervision of staff, and inmate workers," (*id.* ¶ 9), that Delgrosso was "responsible for investigating and responding to inmate grievances," (*id.* ¶ 10), that Vollmer was "responsible for investigating inmate grievances [and] responding to inmate grievances," (*id.* ¶ 11), that Mendoza was "responsible for inmate meals, food storage and distribution," (*id.* ¶ 12), and that Blackman was "responsible for all Aramark employees," (*id.* ¶ 13). Such allegations are paradigmatic examples of supervisory responsibility, not direct involvement.

Beyond this recitation of Individual Defendants' supervisory titles, Plaintiff levels only a single allegation against Individual Defendants.[2] Specifically, Plaintiff alleges that they "had sufficient prior knowledge that the food being served to inmates at WCDOC was substandard, . . . causing dozens of inmates to become sick," as demonstrated by the "previous

---

[2] Arguably, the Complaint contains one additional factual allegation of possible misconduct specifically focused on Delgrosso. Plaintiff alleges that when he attempted to file a grievance, Sergeant Kitt "kindly informed him that Delgrosso . . . and the higher ups did not want sergeants accepting Aramark food-related grievances." (Compl.¶ 17.) Even assuming that Delgrosso in fact directed sergeants not to accept such grievances, this still would not provide a basis for a § 1983 action. A policy barring food-related grievances is not equivalent to, or even suggestive of, a policy in favor of constitutionally inadequate food. Insofar as Plaintiff might argue that Delgrosso's alleged conduct violated an independent constitutional right of access to the courts, such a claim is belied by the very existence of this lawsuit. *See Harris v. Westchester Cty. Dep't of Corr.,* No. 06-CV-2011, 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008) ("[I]n the event that prison officials ignore a grievance that raises constitutional claims, the proper avenue to seek relief is the course taken by [the] plaintiff here: directly petitioning the government for redress of his claims.") (citations omitted) (collecting cases); *see also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A] plaintiff must allege that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim.") (quotation, citations, and alteration omitted); *Crispin v. Westchester County*, No. 18-CV-7561, 2019 WL 2419661, at *4 (S.D.N.Y. June 10, 2019) (rejecting a substantially identical claim and granting Defendants' motion to dismiss).

8

and present lawsuits, grievances, complaints, and daily meetings . . . where grievances are discussed." (*Id.* ¶ 29.)

As this Court recently concluded with respect to an identical allegation, such generic and conclusory pleadings are insufficient to support Plaintiff's claims. *See Rivera v. Westchester County*, No. 18-CV-8354, 2019 WL 3958425, at *3 (S.D.N.Y. Aug. 22, 2019). As in *Rivera*, Plaintiff's allegations contain no facts suggesting that any of Individual Defendants "participated directly in the preparation or sale of food at all (let alone in the preparation or sale of the particular food at issue)." *Id.* Similarly, although Plaintiff generically alleges that Individual Defendants have "sufficient prior knowledge," based on "lawsuits, grievances, complaints and daily meetings," he offers no specific factual details concerning any such events (e.g., times, places, participants, subject matter discussed, or even the presence of any of Individual Defendants). The Complaint similarly contains no factual allegations suggesting that Individual Defendants established or permitted a policy or custom of serving rotten food to inmates, or that they were grossly negligent in allowing others to prepare food without following proper procedures, or that they were deliberately indifferent to Plaintiff's condition after being informed of his illness and its cause. Plaintiff has therefore failed to plead Individual Defendants' direct involvement. *See Grullon*, 720 F.3d at 139 (listing various ways to show personal involvement).

Because Plaintiff fails to allege the personal involvement of Individual Defendants in the alleged unconstitutional deprivations at issue, his claims against them are dismissed.

### 2. *Monell* Liability Against Westchester County and Aramark

Defendants argue that Plaintiff has failed to state a *Monell* claim against Municipal Defendants, Aramark and Westchester County. (Defs.' Mem. 7–10.) The Court agrees.

9

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (italics omitted)). That is, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). Therefore, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citation omitted). The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Liberally construed, Plaintiff seeks to establish *Monell* liability based on the third and fourth prongs enumerated in *Brandon*. The Complaint alleges that there have been numerous "previous and present lawsuits, grievances, complaints, and daily meetings" in which inmate

grievances relating to substandard food were discussed. (*Id.* ¶ 29.) Plaintiff also alleges that Defendants "have grossly supervised their contractors and inmate workers for such a duration that Defendants and inmate workers believe that their act(s) and/or omissions will go forward with[] impunity and be tolerated." (Compl. ¶ 32.)

In *Rivera*, this Court concluded that identical allegations failed to state a *Monell* claim, *Rivera*, 2019 WL 3958425, at *4–5. Here, this Court reaches the same conclusion for substantially similar reasons. First, Plaintiff's allegations cannot sustain a *Monell* claim based on a consistent and widespread practice. Plaintiff describes only his own experiences, and pleads no facts concerning Aramark's or Westchester County's conduct more widely. The Complaint's only arguable support for claiming such a widespread practice is Plaintiff's allegation that numerous similar lawsuits, grievances, and complaints against Aramark have been filed. (*See* Compl. ¶ 29.) However, Plaintiff fails to provide any factual details regarding these other lawsuits and grievances. "The absence of such detail dooms Plaintiff's Complaint." *Rivera*, 2019 WL 3958425 at *5; *see also Mercedes v. Westchester County*, No. 18-CV-4087, 2019 WL 1429566, at *5 (S.D.N.Y. Mar. 29, 2019) (dismissing *Monell* claim against Aramark and county alleging that the plaintiff was served unhygienic and inedible food where the plaintiff did not allege "the existence of any policy, any actions taken or decisions made by . . . policymaking officials, any systemic failures to train or supervise," or any "factual indicia from which this Court could infer the existence of a policy or custom"); *Hoffstead v. Aramark Corr. Servs., LLC*, No. 18-CV-2381, 2019 WL 1331634, at *4–5 (S.D.N.Y. Mar. 25, 2019) (same); *McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *Ackridge v. Aramark Corr. Food*

*Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *13 (S.D.N.Y. Mar. 30, 2018) (dismissing *Monell* claim against county alleging the plaintiff was not served kosher food because the plaintiff failed to allege any specific facts about a custom or policy aside from the facts of his own case); *Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case" (citations omitted)).

With respect to Plaintiff's allegation that Municipal Defendants failed to properly train and supervise kitchen workers, Plaintiff's Complaint does not contain sufficient factual matter to state a claim. Although "[a] municipality's failure to properly train its employees can under certain circumstances give rise to *Monell* liability, . . . a claim based on this theory still must be properly pled under *Iqbal*." *Simms v. City of New York*, No. 10-CV-3420, 2011 WL 4543051, at *2 (E.D.N.Y. Sept. 28, 2011) (citation and footnote omitted), *aff'd*, 480 Fed. Appx. 627 (2d Cir. 2012). To state a claim for municipal liability based on failure to train, Plaintiff must allege facts that support an inference that Municipal Defendants failed to train their employees, that they did so with deliberate indifference, and that the failure to train caused his constitutional injuries. *See Treadwell v. County of Putnam*, No. 14-CV-10137, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016) ("To establish *Monell* liability premised on a failure to supervise, a plaintiff must plead that (1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." (citation omitted)). In particular, "a plaintiff must plausibly allege a specific deficiency in the municipality's training." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015). Furthermore, a failure to train constitutes a policy or custom that is actionable under § 1983 only where "in light of the duties assigned to

specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (footnote omitted).

Plaintiff's bare claim that Municipal Defendants failed to train and supervise its staff is a "boilerplate assertion[]" and is therefore insufficient, without more, to state a *Monell* claim. *Araujo v. City of New York*, No. 08-CV-3715, 2010 WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010) (dismissing failure to train claim where a plaintiff alleged "no facts to indicate any deliberate choice by municipal policymakers to engage in unconstitutional conduct"); *see also Quick v. Westchester County*, No. 18-CV-243, 2019 WL 1083784, at *5 (S.D.N.Y. Mar. 7, 2019) (dismissing *Monell* claim where the plaintiff alleged failure to supervise kitchen workers who did not wear hair nets, among other shortcomings, because the complaint was "devoid of any detailed factual allegations" that WCDOC lacked "a relevant training or supervisory program" or that WCDOC "was otherwise deliberately indifferent to food preparation problems"); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 539–40 (S.D.N.Y. 2012) (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program"). Plaintiff has cited no specific deficiency in Municipal Defendants' training or supervision protocols.

Under some circumstances, a plaintiff may also establish a municipal defendant's deliberately indifferent failure to supervise by showing "that the need for more or better supervision to protect against constitutional violations was obvious" from the fact that there "were repeated complaints of civil rights violations," and that "the complaints [were] followed

by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Shepherd v. Powers*, No. 11-CV-6860, 2012 WL 4477241, at *9 (S.D.N.Y. Sept. 27, 2012) (citations and quotation marks omitted); *see also Lawrence v. City of Rochester*, No. 09-CV-6078, 2015 WL 510048, at *7 (W.D.N.Y. Feb. 6, 2015) ("Deliberate indifference may be inferred from the failure to train or supervise based on proof of repeated complaints of civil rights violations that are followed by no meaningful attempt on the part of the municipality to investigate or to forestall." (citation and quotation marks omitted)); *Aretakis v. Durivage*, No. 07-CV-1273, 2009 WL 249781, at *29 (N.D.N.Y. Feb. 3, 2009) (same).

Here, the only arguable support for a claim that repeated complaints went unheeded by Municipal Defendants is Plaintiff's allegation of "previous and present lawsuits, grievances, complaints, and daily meetings" in which inmate grievances relating to substandard food were discussed. (Compl. ¶ 29.) However, prior cases where plaintiffs have successfully established deliberate indifference by pointing to previous grievances and lawsuits generally involve pleadings that name and detail the previous suits. *See Tieman*, 2015 WL 1379652, at *19–21 (holding that the plaintiff sufficiently alleged the need for better training or supervision where the plaintiff listed and detailed nine other complaints raising similar allegations against same defendants); *McCants v. City of Newburgh*, No. 14-CV-556, 2014 WL 6645987, at *4–5 (S.D.N.Y. Nov. 21, 2014) (holding that the plaintiff sufficiently alleged need for better training or supervision where the plaintiff listed and detailed seventeen other complaints over a seven-year period raising similar allegations against the same defendants); *Farrow v. City of Syracuse*, No. 12-CV-1401, 2014 WL 1311903, at *8 n.7 (N.D.N.Y. Mar. 31, 2014) (stating that the fact that "at least 15 excessive force complaints ha[d] been filed against the [c]ity in the past 5 years" would be sufficient to state a plausible failure to train case). Here, Plaintiff's allegation is

entirely generic; he has provided no information about the nature, extent, or content of past grievances. Such a bare allegation is insufficient to support a claim of deliberate indifference.

Accordingly, Plaintiff's claims against Westchester County and Aramark are dismissed, as are any official capacity claims Plaintiff intended to assert against Individual Defendants. *See McKenzie*, 2018 WL 6831157, at *7 (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *Voltaire v. Westchester Cty. Dep't of Soc. Servs.*, No. 11-CV-8876, 2016 WL 4540837, at *7 (S.D.N.Y. Aug. 29, 2016) (dismissing the plaintiff's claims against municipal employees in their official capacities where the complaint "provided no facts that would allow [the court] to plausibly infer that [the defendants] acted pursuant to a municipal custom or practice").

### III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted. Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint. The amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.[3]

---

[3] As Judge Briccetti explained in a similar case alleging deficient food at Westchester County Jail, Plaintiff should, in amending his complaint:

1. give the dates and times of each incident in which [he] was served the food described in his complaint;

The Clerk is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 26), and mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated: November 7, 2019
White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

2. describe how each defendant was involved in serving [him] such food—for example, whether the defendant personally served him that food, was present when [he] was served such food, or otherwise knew [he] was served the food;

3. describe how each defendant knew or should have known the food served to [him] was inadequate;

4. state which, if any, defendants [he] informed of the problems with his food on each such occasion, how the defendants responded to his complaints, and how the defendants' responses or lack thereof contributed to his injury;

5. include any details why [he] believes Aramark, Westchester County, or any of their employees gave him such food or failed to remedy his complaints; and

6. include any facts regarding the existence of an official Aramark or Westchester County policy or [unofficial] custom that caused the deprivation of a constitutional right.

*Crispin*, 2019 WL 2419661, at *5.